1  DAVID F. BEACH, ESQ. (SBN 127135)
   beach@perrylaw.net
2  SARAH JANE T.C. TRUONG, ESQ. (SBN 314966)
   truong@perrylaw.net
3  PERRY, JOHNSON, ANDERSON,
   MILLER & MOSKOWITZ, LLP
4  438 First Street, Fourth Floor
5  Santa Rosa, CA 95401
   Telephone: (707) 525-8800
6  Facsimile: (707) 545-8242

7
8  Attorneys for Defendants
   NICHOLAS FINN, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSEPH SCHWARTZ, *et al.*              CASE NO.       20-cv-2044-SK

            Plaintiffs,               **DEFENDANTS' NOTICE OF MOTION AND
                                      MOTION TO DISMISS FIRST AMENDED
       vs.                            COMPLAINT**

NICHOLAS FINN, *et al.*               Date:      July 13, 2020
                                      Time:      9:30 a.m.
            Defendants.               Location:  Courtroom C, 15th Floor

                                      Assigned to Judge Sallie Kim

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on July 13, 2020, at 9:30 a.m., in Courtroom C, 15th Floor, of the United States District Court, San Francisco Courthouse, located at 450 Golden Gate Ave., San Francisco, CA 94102, defendants NICHOLAS FINN, *et al.* ("Defendants") will, and hereby do, move this court for an order dismissing with prejudice Plaintiffs' First Amended Complaint (Doc. 5) and all claims asserted therein in their entirety.

The Motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  This Motion is based on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the pleadings and filings in this action; and such further evidence or argument properly before the Court.

/ / /

/ / /

DEFENDANTS NOTICE OF MOTION
AND MOTION TO DISMISS
CASE NO. 20-cv-2044-SK

1

DATED: June 5, 2020

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ, LLP

2

By:     */s/ David F. Beach*

3

DAVID F. BEACH
SARAH JANE T.C. TRUONG

4

Attorneys for Defendants
NICHOLAS FINN, et al

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    DAVID F. BEACH, ESQ. (SBN 127135)
     beach@perrylaw.net
2    SARAH JANE T.C. TRUONG, ESQ. (SBN 314966)
     truong@perrylaw.net
3    PERRY, JOHNSON, ANDERSON,
     MILLER & MOSKOWITZ, LLP
4    438 First Street, Fourth Floor
5    Santa Rosa, CA 95401
     Telephone: (707) 525-8800
6    Facsimile: (707) 545-8242

7
     Attorneys for Defendants
8    NICHOLAS FINN, et al.

                        UNITED STATES DISTRICT COURT
9
                       NORTHERN DISTRICT OF CALIFORNIA
10

11   JOSEPH SCHWARTZ, *et al.*           CASE NO.        20-cv-2044-SK

12              Plaintiffs,              **MEMORANDUM OF POINTS AND
                                         AUTHORITIES IN SUPPORT OF
13         vs.                           DEFENDANTS' MOTION TO DISMISS FIRST
                                         AMENDED COMPLAINT**
14   NICHOLAS FINN, *et al.*
                                         Date:      July 13, 2020
15              Defendants.              Time:      9:30 a.m.
                                         Location:  Courtroom C, 15th Floor
16
                                         Assigned to Judge Sallie Kim
17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS NOTICE OF MOTION
AND MOTION TO DISMISS
CASE NO. 20-cv-2044-SK

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. THE STANDARD FOR MOTIONS TO DISMISS...........................................................2

III. THE FACTS FOR PURPOSES OF THIS MOTION ..............................................................2

    A.    The Parties, the Transactions, and the Claims.........................................................2

    B.    The OTAs Govern the Defendants' Financial Disclosures Upon Which
        Plaintiffs' Claims are Based ...................................................................................5

IV. WHAT STATE'S LAW APPLIES TO PLAINTIFFS' TORT CLAIMS?.............................8

    A.    The Choice of Law Analysis ..................................................................................8

    B.    Nebraska .................................................................................................................9

    C.    South Dakota ..........................................................................................................9

    D.    Pennsylvania ........................................................................................................11

    E.    Delaware...............................................................................................................11

    F.    Kansas ..................................................................................................................13

    G.    Conclusion ...........................................................................................................16

V. ARGUMENT.......................................................................................................................16

    A.    Plaintiffs' Claims are Untimely Under the Applicable Statute of Limitation,
        and the Entity Plaintiffs' Claims are Also Untimely Under the OTAs...................16

    B.    The Economic Loss Doctrine Bars the Entity Plaintiffs' Tort Claims ...................18

    C.    The OTAs Preclude the Entity Plaintiffs' Claims .................................................20

    D.    The Complaint Fails to Plead the Elements of Fraud, Much Less with
        Particularity ..........................................................................................................22

    E.    The Complaint Fails to State a Claim by the Individual Plaintiffs, who also
        Lack Standing ......................................................................................................23

    F.    The Complaint Fails to State a Claim Against the Individual Defendants .............23

VI. CONCLUSION...................................................................................................................24

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*1–800–Got Junk? LLC v. Superior Court*, 189 Cal. App. 4th 500, 513 n.10 (2010)......................... 18

4

*Abrams v. Blackburne and Sons Realty Capital Corp.*, No. 219CV06947CASAS,

5

   2019 WL 8640656, at *13 (C.D. Cal. Dec. 2, 2019) ................................................... 25

6

*Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1048 (Del. Ch.

7

   2006).......................................................................................................................... 14

8

*Andrewjeski v. Bimbo Foods Bakeries Distribution, LLC*, No. 18-2425-KHV, 2019

9

   WL 2250068, at *13 (D. Kan. May 24, 2019) ............................................................ 17

10

*Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc.*, 521 F. Supp. 2d 1031,

11

   1044 (N.D. Cal. 2007) ............................................................................................... 26

12

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 515 (Cal.1994)......................... 17

13

*Arnold v. Metlife Auto & Home Ins. Agency, Inc.*, No. 19-CV-03920-VKD, 2020 WL

14

   1067005, at *7 n.5 (N.D. Cal. March 5, 2020) ........................................................... 20

15

*Bell-Sparrow v. SFG*Proschoicebeauty* (N.D. Cal. Mar. 14, 2019, No. 18-CV-

16

   06707-YGR) 2019 WL 1201835, at *8.................................................................... 26

17

*BHC Dev., L.C. v. Bally Gaming, Inc.,* 985 F. Supp. 2d 1276, 1287 (D. Kan. 2013) ..................... 16

18

*Black Box Corp. v. Markham*, 127 Fed. App'x 22, 25–26 (3rd Cir. 2005)..................................... 13

19

*Cannon v. Wells Fargo Bank NA*, 917 F. Supp. 2d 1025, 1051 (N.D. Cal. 2013) ........................... 9

20

*Cedar Point Nursery v. Shiroma*, 923 F.3d 524, 530 (9th Cir. 2019)............................................. 2

21

*Century 21 Real Estate LLC v. All Prof'l Realty, Inc.*, 889 F. Supp. 2d 1198, 1216

22

   (E.D. Cal. 2012), *aff'd*, 600 F. App'x 502 (9th Cir. 2015)........................................... 16

23

*Cessna Fin Corp. v. JetSuite, Inc.*, No. 18-1095-EFM-KGG, 2020 WL 430211, at *8

24

   (D. Kan., January 28, 2020)..................................................................................... 14

25

*Commerce Point Capital, Inc. v. First Data Corp.*, No. 19-CV-556-W (LL), 2019

26

   WL 7020057, at *3–4 (S.D. Cal., December 20, 2019) .............................................. 15

27

*Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) ......................................... 2

28

DEFENDANTS NOTICE OF MOTION
AND MOTION TO DISMISS
CASE NO. 20-cv-2044-SK

*Crystal Springs Upland Sch. v. Fieldturf USA, Inc.*, 219 F. Supp. 3d 962, 970 (N.D. Cal. 2016) ................................................................................................... 24

*Discover Bank v. Super. Ct.*, 134 Cal. App. 4th 886, 893, 36 Cal.Rptr.3d 456 (2005) ................... 16

*Eby v. Thompson*, No. 03C-10-010, 2005 WL 1653988, at *3 (Del. Super. Ct. April 20, 2005) ................................................................................................... 13

Enter. Bank & Tr. v. Barney Ashner Homes, Inc., 2013 WL 1876293, at *16 (Kan. Ct. App. 2013) ................................................................................................... 15

*Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999) ............................................................. 23

*Finnell v. Ford Motor Co.*, No. 5:19-CV-08030-EJD, 2020 WL 1082704, at *1 (N.D. Cal. March 6, 2020) ................................................................................................... 20

*Fischer Farms v. Big Iron Auction Co, Inc.*, No. CIV 19-4111, 2020 WL 475607, at *3 (D.S.D., January 28, 2020) ................................................................... 11, 12

*Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 694 (Cal.1988) ..................................... 17

*Freeman & Mills, Inc. v. Belcher Oil Co.,* 11 Cal.4th 85, 106 (Cal.1995) ........................ 17

*Gasperini v. Ctr for Humanities, Inc.*, 518 US 415, 427 (1996) ........................................ 9

*Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007)............................. 23

*Gloucester Holding Corp. v. U.S. Tape and Sticky Products, LLC*, 832 A.2d 116, 124 (Del. Ch. 2003)................................................................................................... 13

Hinesley v. Oakshade Town Ctr., 135 Cal. App. 4th 289, 300–302 (2005) ................................... 25

*Holley v. Gilead Scis., Inc.,* 379 F. Supp. 3d 809, 817 (N.D. Cal. 2019)......................... 27

*Huffington v. T.C. Group, LLC*, No. N11C-01-030, 2012 WL 1415930, at *11 (Del. Super. Ct. April 18, 2012) ................................................................... 13

*In re Brocade Commc'ns Syst., Inc. Derivative Litig.,* 615 F. Supp.2d 1018, 1035 (N.D. Cal. 2009)................................................................................................... 22

*In re Facebook Biometric Information Privacy Litigation.*, 185 F. Supp. 3d 1155, 1167–68 (N.D. Cal. 2016) (citations omitted) .............................................. 9

*In re Google Asst Privacy Litig*, No. 19-CV-04286-BLF, 2020 WL 2219022, at *3

1    (N.D. Cal., May 6, 2020) ................................................................................................ 2

2  *In re Real Mktg. Servs., LLC*, 309 B.R. 783, 788 (S.D. Cal. 2004) .................................. 29

3  *Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, (8th Cir. 2001) ........................... 11

4  *Jiffy Lube Intern, Inc. v. Jiffy Lube of Pennsylvania, Inc.*, 848 F. Supp. 569, 576

5    (E.D. Pa. 1994) ............................................................................................................... 12

6  *JMP Sec. LLP v. Altair Nanotech. Inc.,* 880 F. Supp. 2d 1029, 1035–36 (N.D. Cal.

7    2012) ...........................................................................................................................9, 19, 22

8  *Johnston v. Covidien, LP*, No. C19-01419 WHA, 2019 WL 2410720, at *3 (N.D.

9    Cal. June 7, 2019) ............................................................................................................ 20

10 *King v. Bumble Trading, Inc.*, 393 F. Supp. 3d 856, 865 (N.D. Cal. 2019) ............... 15, 16

11 *Kline v. Turner*, 87 Cal. App. 4th 1369, 1373 (2001) ...................................................... 19

12 *Lever Your Business, Inc. v. Sacred Hoops & Hardwood, Inc.*, No.

13    519CV1530CASKKX, 2019 WL 7050226, at *6–7 (C.D. Cal. Dec. 23, 2019) ......................... 23

14 *Lorem Vascular, Pty Ltd v. Cytori Therapeutics, Inc.*, No. 18CV815 MMA (MDD),

15    2018 WL 3388096, at *8 (S.D. Cal. July 11, 2018) ........................................................ 14

16 *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ........................ 2

17 *Marshall v. Danone US, Inc.*  402 F. Supp.3d 831, 834 (N.D. Cal. 2019) ......................... 2

18 *Mishiyev v. Alphabet, Inc.*, No. C 19-05422 WHA, 2020 WL 1233843, at *4 (N.D.

19    Cal. Mar. 13, 2020) ......................................................................................................... 24

20 *Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459, 469 n. 7 (1992) ................... 9, 13, 14, 15, 16

21 *Netlist, Inc. v. SMART Storage Sys., Inc.,* No. 13-CV-5962-YGR, 2014 WL 4380760,

22    at *3 (N.D. Cal. Sept. 4, 2014) ........................................................................................ 22

23 *Oracle USA, Inc. v. XL Global Services, Inc.,* C 09–00537 MHP, 2009 WL 2084154,

24    at *4 (N.D. Cal. July 13, 2009) ....................................................................................... 17

25 *PacLink Commc'ns Int'l, Inc. v. Superior Court*, 90 Cal. App. 4th 958, 964 (2001) ....................... 29

26 *Pipeline Productions, Inc. v. Madison Companies, LLC*, No. CV 15-4890-KHV,

27    2020 WL 1274968, at *4 (D. Kan., March 17, 2020) ..................................................... 17

28  DEFENDANTS NOTICE OF MOTION
    AND MOTION TO DISMISS
    CASE NO. 20-cv-2044-SK

1   *Rand Const. Co. v. Dearborn Mid-W. Conveyor Co.*, 944 F. Supp. 2d 1042, 1062 (D.

2      Kan. 2013) ......................................................................................................................... 16

3   *Rich Prod. Corp. v. Kemutec, Inc.*, 66 F. Supp. 2d 937, 969 (E.D. Wis. 1999) .............................. 22

4   *Richardson Intl (US) Ltd v. Buhler Inc.*, No. 8:14CV148, 2017 WL 11485738, at *5

5      (D. Neb., March 23, 2017)..................................................................................................... 10

6   *Ridgway v. Phillips*, No. 18-CV-07822-HSG, 2020 WL 1288464, at *8 (N.D. Cal.,

7      Mar. 18, 2020)........................................................................................................................ 24

8   *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004).............................. 17, 22

9   *Robinson v. J.M. Smucker Co.*, No. 18-CV-04654-HSG, 2019 WL 2029069, at

10      *6 (N.D. Cal., May 8, 2019) ................................................................................................. 24

11   *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1324 (9th Cir. 2012) ........................................... 18

12   *Signal Hill Serv., Inc. v. Macquarie Bank Ltd.*, No. 11-CV-1539-MMM (JEMx),

13      2013 WL 12244056, at *7 (C.D. Cal. June 12, 2013).................................................................. 25

14   *SMA, LLC v. Chief Indus, Inc.*, No. 3:17-CV-03021-RAL, 2020 WL 1515758, at *7

15      (D.S.D., March 30, 2020) ...................................................................................................... 10

16   *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007) ........................................................ 30

17   *Tanner v. Hightower*, No. EDCV 15-183 JAK(JC), 2016 WL 7974658, at *6 (C.D.

18      Cal. Dec. 13, 2016), *report and recommendation adopted,* No. EDCV 15-183

19      JAK(JC), 2017 WL 354172 (C.D. Cal. Jan. 24, 2017) ............................................................... 29

20   *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ........................................... 2

21   *Twin City Pipe Line Co. v. Harding Glass Co.*, 283 U.S. 353, 357, 51 S.Ct. 476, 75

22      L.Ed. 1112 (1931) ................................................................................................................. 16

23   *UMG Recordings, Inc. v. Global Eagle Entm't Inc.*, 117 F. Supp. 3d 1092, 1103

24      (C.D. Cal. 2015)..................................................................................................................... 23

25   *Underwriters at Lloyd's v. Abaxis, Inc.*, No. 19-CV-02945-PJH, 2020 WL 1677341,

26      at *3 (N.D. Cal. Apr. 6, 2020) ............................................................................................... 23

27   *United Guar. Mortg. Indem. Co. v. Countrywide Financial Corp.*, 660 F. Supp. 2d

28   DEFENDANTS NOTICE OF MOTION
       AND MOTION TO DISMISS
       CASE NO. 20-cv-2044-SK

1163, 1180 (C.D. Cal. 2009) ................................................................................. 23

Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) ........................... 27

*VSI Sales, LLC v. Intl Fid Ins Co*, No. CV 15-507-GMS, 2015 WL 5568623, at *3

  (D. Del., September 22, 2015) ............................................................................. 13

*WeBoost Media SRL v. LookSmart Ltd*, No. C 13-5304 SC, 2014 WL 824297, at *4

  (ND Cal, February 28, 2014) ............................................................................... 18

*Workplace Techs. Research, Inc. v. Project Mgmt. Inst., Inc.*, No. 18CV1927 JM

  (MSB), 2019 WL 1239314, at *9 (S.D. Cal., March 18, 2019) .................................. 19

*Yetter v. Ford Motor Company*, 428 F. Supp. 210, 221 (N.D. Cal. 2019) ...................... 19

*Zaborowski v. MHN Gov't Servs., Inc.*, 936 F. Supp. 2d 1145, 1155 (N.D. Cal.

  2013) *aff'd* 601 Fed. App'x 461 (9th Cir. 2014) .................................................... 26

**Statutes**

Cal. Civ. Proc. Code § 338(d) ....................................................................... 19, 20

**Other Authorities**

*Restatement (Second) of Conflict of Laws* § 187 ............................................... 14

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ........................................................... 1, 2

Federal Rule of Civil Procedure 9(b) ................................................................. 27

# I. <u>INTRODUCTION</u>

Defendants move to dismiss Plaintiffs' First Amended Complaint (Doc. 5) (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.   The Complaint asserts tort claims for fraudulent and negligent misrepresentation arising out of financial disclosures certain Defendants made as part of a series of operations transfer and leasing transactions for skilled nursing facilities in four states. Despite that Plaintiffs state in their Complaint that they knew "immediately" that the financial disclosures allegedly were false, Plaintiffs continued to move forward with the series of transactions and then waited more than three years to file the claims in this case.

Further, the disclosures made by Defendants were pursuant to written contracts. Those contracts contain and govern all representations by Defendants related to the disclosures. The contracts also govern and limit the Plaintiffs' rights and remedies, expressly precluding the relief Plaintiffs seek in the Complaint.   Moreover, Plaintiffs' grievance is actually not that the Defendants' disclosures and related representations were false – because they weren't – but rather that the Plaintiffs were unable to replicate the Defendants' accurately represented results with the facilities. In fact, the only particular thing the Plaintiffs actually allege is that they could not get as favorable terms from a vendor as those Defendants had. This is not misrepresentation, fraudulent, negligent, or otherwise.

In short, Plaintiffs'' claims are belated, belied by the underlying documents, and seek to impose liability for conduct that, even as alleged, was not wrongful.   Accordingly, and as shown herein, the Complaint fails to state a claim for multiple reasons, including:

- The claims are untimely under both the applicable statutes of limitation and applicable contract provisions.
- Tort claims are barred by the economic loss doctrine because they are for nothing more than violation of contract terms.
- The contracts expressly preclude the claims, damages, and other remedies sought.

DEFENDANTS NOTICE OF MOTION
AND MOTION TO DISMISS
CASE NO. 20-cv-2044-SK

1

- • The Complaint fails to plead the elements of fraud, much less with the required particularity.

- • The individual Plaintiffs lack standing.

- • Plaintiffs fail to identify any particularized facts that would state a claim against the individual Defendants.

For these reasons, as set forth in detail below, the Court should grant this motion and dismiss the Complaint in its entirety with prejudice.

## II.  THE STANDARD FOR MOTIONS TO DISMISS

A Rule 12(b)(6) motion to dismiss challenges the legal sufficiency of the claims alleged in the complaint. *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011). Dismissal for failure to state a claim upon which relief can be granted may be based on either the "lack of a cognizable legal theory"   or   on   "the   absence   of sufficient facts   alleged   under   a cognizable legal theory." *Id.* at 1242 (internal quotation marks and citation omitted); *Marshall v. Danone US, Inc.*  402 F. Supp.3d 831, 834 (N.D. Cal. 2019).

> A court's  review  on  a 12(b)(6) motion to dismiss "is  limited  to  the  complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Cedar Point Nursery v. Shiroma*, 923 F.3d 524, 530 (9th Cir. 2019) (citing *Tellabs. Inc. v. Makor Issues & Rights. Ltd.*, 551 U.S. 308, 322 (2007)). Moreover, in evaluating the complaint, the court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

*In re Google Asst Privacy Litig*, No. 19-CV-04286-BLF, 2020 WL 2219022, at *3 (N.D. Cal., May 6, 2020).

## III. THE FACTS FOR PURPOSES OF THIS MOTION

### A.  The Parties, the Transactions, and the Claims

This case arises from the transfer of operations at skilled nursing facilities ("SNFs") in four states pursuant to separate, but substantively identical contracts known as Operations Transfer Agreements ("OTAs"), and the related leasing of the SNF premises pursuant to two Master Leases. All but two Plaintiffs are entities that were each a party to a separate OTA for each SNF transferred, and also to one of the two Master Leases covering the transferred SNFs (the "Entity Plaintiffs").

1    There are also two individuals, Joseph and Rosie Schwartz, who own and control the Entity

2    Plaintiffs, but who are not party to any of the OTAs or either of the Master Leases (the "Individual

3    Plaintiffs"). (Complaint at ¶¶ 1-63.)

4         Defendants are the following: (i) entities that previously held the license to operate the

5    SNFs, each of which transferred them to one of the Entity Plaintiffs pursuant to separate OTAs (the

6    "Former Operator Defendants); (ii) the landlord entities, each of which is a party to one of the two

7    Master Leases (the "Landlord Defendants"); (iii) two individuals, Nicholas Finn and Ronald E.

8    Silva, who are not party to any of the OTAs or either of Master Leases and who are lumped in with

9    the other Defendants in a conclusory manner in the counts of the Complaint despite no indication of

10   what facts allegedly make them individually liable to Plaintiffs (the "Individual Defendants"); and

11   (iv) GGNSC Administrative Services, LLC ("GGNSC Admin"), which Plaintiffs allege to have

12   marketed the SNFs (Complaint at ¶¶ 64-192).

13        All the Defendants except one of the two individuals are alleged to be citizens of California.

14   (Complaint at ¶ 188).  According to the Complaint, all the limited liability company Defendants

15   trace their membership back to a non-party corporation that has "its principal place of business in

16   San Francisco, California." (Complaint at ¶¶ 66-186). The Complaint further alleges that "a

17   substantial part of the acts or omissions giving rise to this action occurred in the Northern District of

18   California." (Complaint at ¶ 190).

19        The Complaint alleges that "as part of it marketing scheme" for the SNFs, Defendant

20   GGNSC, through its agent Houlihan Lokey, "prepared misleading, false, and manipulated financials

21   for each of its nursing home facilities with the purpose of enticing prospective tenants and new

22   operators to overpay for the lease of its facilities."  (Complaint at ¶¶ 192-93).  "Specifically," the

23   Complaint alleges, "Defendants knew that several of its expenses in the disclosed financial

24   statements were significantly below the rates that would be charged to any new operator of those

25   facilities. This includes, but is not limited to, the preferential rates GGNSC Admin received from

26   Staffing 360 (the staffing company used for all of its facilities) would not be extended to any

27   subsequent operator of those facilities." (Complaint at ¶ 194).

28   DEFENDANTS NOTICE OF MOTION
     AND MOTION TO DISMISS
     CASE NO. 20-cv-2044-SK
                                              - 3 -

According to the Complaint, "Instead of accurately representing the expenses on the disclosed financial statements to reflect this increase in costs to operate the facilities, or at the very least notate that the preferential rates would [not] continue, GGNSC, through its agent Houlihan Lokey, intentionally and willfully reduced the expense figure in prior years to reflect its most currently negotiated contract."  (Complaint at ¶195).  There are no other particularized factual allegations of wrongful conduct by Defendants in the Complaint.

The Complaint continues that "in reliance on the financial statements and representations made by Defendants," the Plaintiffs "on or about August 26, 2016" entered into twenty (20) separate OTAs for Nebraska facilities and fifteen (15) separate OTAs for the Kansas facilities; "on or about December 7, 2016" entered into nineteen (19) separate OTAs for the South Dakota facilities and seven (7) separate OTAs for certain Pennsylvania facilities; "on or about January 2, 2017" entered into, and made security deposit and lease payments on, a Second Amended and Restated Master Lease for the Nebraska, Kansas, and South Dakota premises; and "on or about" February 1, 2017 entered into, and made security deposit and lease payments on, a Master Lease for the Pennsylvania premises.  (Complaint at ¶¶ 197-208).  Exhibits A-D to the Complaint are copies of an "executed and representative OTA" for the Nebraska, Kansas, South Dakota, and Pennsylvania transactions, respectively. Exhibits E and F are copies of the Second Amended and Restated Master Lease for the Nebraska, Kansas, and South Dakota premises and the Master Lease for the Pennsylvania premises, respectively.

The Complaint goes on to allege that, "It became **immediately** apparent after taking control of the operations at each of the facilities that the financial statements and representations made by Defendants were false and misleading." (Complaint at ¶ 209) (emphasis added). Yet not only did Plaintiffs continue to accept operations of the facilities in the series of transactions that occurred over months, Plaintiffs pursued no remedies under the OTAs. Instead, more than three years later the Plaintiffs filed this action on March 24, 2020 (Doc. 1). They filed their First Amended Complaint on March 27, 2020. (Doc. 5).  The Complaint contains no claims for breach of contract. Instead, it contains the same two tort claims, for fraudulent and negligent misrepresentation,

repeated separately for each Plaintiff as to each OTA and each Master Lease transaction against the corresponding Former Operator Defendants and Landlord Defendants as well as GGNSC.  The two Individual Plaintiffs, Joseph and Rosie Schwartz, who are not parties to any of the OTAs or leases, also purport to assert the two tort claims against all Defendants, and all the Plaintiffs purport to assert the two tort claims against the two individual Defendants, Mr.  Finn and Mr. Silva, although neither of them is a party to any of the OTAs or either of the Master Leases, and the Complaint alleges no particular acts or omissions by either of them in their individual capacities.  It seeks punitive damages and demands a jury trial. (Complaint at 163.)

So while the Complaint promiscuously invokes the generalized epithet "false," when closely read the only thing in it resembling a particularized allegation is actually not that the financial disclosures were actually false. Indeed, and significantly, the Complaint never directly disputes that the disclosures presented fairly and accurately in all material respects the financial condition of the SNFs and the results of operation of the SNFs at the dates and for the periods indicated consistent with operator's past practices in preparing financial statements," which is the entirety of what the Defendants actually represented about the disclosures in the OTAs.

**B.  The OTAs Govern the Defendants' Financial Disclosures Upon Which Plaintiffs' Claims are Based**

The Complaint understandably fails to say so, but each of the OTAs provides for and governs the financial disclosures and related representations upon which Plaintiffs' claims are based.  The OTAs also contain other provisions relevant to Plaintiffs' attempt to pursue tort remedies in disregard of the express contract terms.   Specifically, the "representative" OTAs attached as Exhibits A-D to the Complaint contain the following relevant provisions:

Section 14.1(F) in the Representations and Warranties section on Page 16 the OTAs, provides for the financial disclosures upon which Plaintiffs' claims are based:

> Prior to the date hereof, Operator has delivered or otherwise made available in the VDR [Virtual Data Room] to New Operator copies of the unaudited balance sheets of the Facility for the years ending December 31, 2014, and December 31, 2015, and statements of income for the years then ended, and Operator has delivered copies of an unaudited interim balance sheet of the Facility at June 30, 2016, and statements of income with respect to the Facility for the six (6) month period then ended (collectively, the **"Facility Financial Statements"**).

1
2
      To the actual knowledge of Operator's Senior Executives, except as set forth on **Schedule 14.1(F),** the Facility Financial Statements present fairly and accurately in all material respects the financial condition of the Facility and the results of operation of the Facility at the dates and for the periods indicated consistent with Operator's past practices in preparing financial statements.

3

4  (Bold in originals). Schedule 14.1(F) of the OTAs does not contain any exceptions.

5      In Section 2(C) on Page 3 of the OTAs the Entity Plaintiffs expressly disclaim, release, and

6  waive any representations other than those expressly contained in the OTAs:

7
8
9
10
11
12
      … **EXCEPT FOR THOSE EXPRESSLY SET FORTH IN THIS TRANSFER AGREEMENT, OPERATOR HAS NOT MADE ANY REPRESENTATION OR WARRANTY REGARDING ANY OF THE FOREGOING ASSETS, PROPERTIES AND RIGHTS OR ANY OTHER MATTER REGARDING OR RELATING TO THE TRANSACTIONS CONTEMPLATED HEREBY. EXCEPT FOR THOSE EXPRESSLY SET FORTH IN THIS TRANSFER AGREEMENT, OPERATOR HEREBY DISCLAIMS, AND NEW OPERATOR FOREVER WAIVES AND RELEASES, ALL REPRESENTATIONS AND WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED, WITH RESPECT TO THE FOREGOING ASSETS, PROPERTIES AND RIGHTS OR ANY OTHER MATTER REGARDING OR RELATING TO THE TRANSACTION CONTEMPLATED HEREBY …**

13  (Capitals in original; Bold emphasis added).

14      Section 17 on Pages 23 and 24 of the OTAs on Survival and Indemnification contains

15  several relevant subsections, including limitations on available remedies and recoverable damages,

16  a prohibition on individual liability, and time limits for asserting claims:

17
18
19
      (A)     Except as specifically set forth in this Agreement, the representations, warranties and covenants contained in this Transfer Agreement, and in any agreements, certificates or other instruments delivered pursuant hereto, shall not survive the Closing hereunder and the consummation of the transactions contemplated hereby.

      …

20
21
22
23
24
25
      (E)    (i) **EXCEPT AS SUCH MAY BE PART OF ANY CLAIM OF ANY THIRD PARTY, UNDER NO CIRCUMSTANCES SHALL OPERATOR, NEW OPERATOR OR ANY AFFILIATE THEREOF BE RESPONSIBLE OR LIABLE IN ANY WAY FOR INCIDENTAL, CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES, DIMINUTION IN VALUE, OR ANY EXEMPLARY DAMAGES, REGARDLESS OF WHETHER THE ACTION IS FOUNDED IN CONTRACT, TORT, STATUTORY OR OTHERWISE, AND BOTH PARTIES AGREE THAT IN NO EVENT SHALL EITHER ASSERT, CLAIM, DEMAND OR OTHERWISE REQUEST SUCH DAMAGES.** (Capitals and bold emphasis in originals).

26
27
      (ii)    **For the avoidance of doubt, no individual officer, director, member, managing member, shareholder, equity holder, partner, employee, agent, or representative of either Party shall have any liability for any claims of the other Party**

28

**related to this Transfer Agreement**, or any agreements, certificates or instruments delivered in connection herewith, in any way.  (Emphasis added).

(iii)    **The remedies provided in this <u>Section 17</u> shall be the sole and exclusive remedies post-Closing that may be available to a Party or an Asserting Party with respect to any matters arising under or relating to this Transfer Agreement**, any document executed and delivered pursuant to the provisions hereof **and the transactions contemplated herein**.  (Bold emphasis added).

(F)    Consistent with <u>Section 17(A),</u> neither Party shall have any liability under this Transfer Agreement or otherwise to the other Party for any claims asserted after the end of the applicable Survival Period, as follows: (i) for a breach of the representations and warranties, and the pre-closing covenants and obligations, contained in this Transfer Agreement, and in any agreements, certificates or other instruments delivered pursuant hereto, shall survive Closing for the period of one (1) year after the Closing Date; and (ii) post-closing covenants and obligations shall survive for the periods as follows: (a) for claims related to Excluded Liabilities, and claims related to Recoupments or misdirected funds, three (3) years after the Closing Date, and (b) any other claim under this Transfer Agreement, including without limitation non-monetary obligations for access and/or retention of records, confidentiality, general cooperation, and further assurances, the relevant statute of limitations (subsections (i), (ii)(a), and (ii)(b) each being a *"Survival Period")*. To the extent that a claim is asserted in writing within the applicable Survival Period, the Party asserting the claim shall have thirty (30) days after the end of the Survival Period to institute formal litigation, in which event the specific amounts as to which the claim is asserted will survive until the full and final resolution of such claim. Notwithstanding the foregoing, no Party shall be liable for any Loss resulting from or relating to any inaccuracy in or breach of any representation, warranty, pre-Closing covenant or obligation, in this Transfer Agreement if the Party seeking indemnification for such Loss had knowledge of such inaccuracy or breach before Closing.

Section 20 of the OTAs provides, in relevant part:

<u>Applicable Law; Consent to Jurisdiction.</u> This Transfer Agreement shall be governed by and construed in accordance with the laws and judicial decisions of the State.

"State" is defined in the Recitals of the OTAs as the state where the subject SNF is located.

Sections 25 and 27 on Pages 25 and 26 of the OTAs provide for a waiver of jury trial and an exclusion of representations not provided in the OTA:

25.    <u>Waiver of Jury Trial.</u> EACH OF THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY RIGHT TO TRIAL BY JURY IN ANY LEGAL ACTION BROUGHT ON OR WITH RESPECT TO THIS TRANSFER AGREEMENT, INCLUDING TO ENFORCE OR DEFEND ANY RIGHTS HEREUNDER, AND AGREES THAT ANY SUCH ACTION SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. (Capitals in original).

…

27.    <u>Entire Agreement.</u> This Transfer Agreement constitutes the entire agreement

between the Parties regarding the matters provided herein and supersedes all prior negotiations, documents or writings with respect thereto. There are no other written statements, promises, or representations made by the Parties that are intended to alter, modify or complement this Transfer Agreement. …

The Master Leases attached as Exhibits E and F to the Complaint, which relate to the Nebraska, Kansas, and South Dakota premises and to the Pennsylvania premises, respectively, each contain the following provisions, set forth in relevant part here:

**24.10 <u>Governing Law; Jury Waiver.</u>** This Lease shall be governed by and construed and enforced in accordance with the internal laws of Delaware, without regard to the conflict of laws rules thereof; … **EACH PARTY HEREBY WAIVES ANY RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER PARTY AGAINST THE OTHER IN CONNECTION WITH ANY MATTER WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS LEASE, INCLUDING RELATIONSHIP OF THE PARTIES, TENANT'S USE AND OCCUPANCY OF THE PREMISES, OR ANY CLAIM OF INJURY OR DAMAGE RELATING TO THE FOREGOING OR THE ENFORCEMENT OF ANY REMEDY.** (Emphasis in original).

**24.11 <u>Entire Agreement.</u>** This Lease constitutes the entire agreement of the parties with respect to the subject matter hereof, and may not be changed or modified except by an agreement in writing signed by the parties. Landlord and Tenant hereby agree that all prior or contemporaneous oral understandings, agreements or negotiations relative to the leasing of the Premises are merged into and revoked by this Lease. …

## IV.   WHAT STATE'S LAW APPLIES TO PLAINTIFFS' TORT CLAIMS?

### A.  The Choice of Law Analysis

The Court must first determine what substantive law applies to Plaintiffs' tort claims. "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr for Humanities, Inc.*, 518 US 415, 427 (1996). Moreover, a "federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." *In re Facebook Biometric Information Privacy Litigation.*, 185 F. Supp. 3d 1155, 1167–68 (N.D. Cal. 2016) (citations omitted).

The initial step in this process is to determine if the "applicable law" provision in the OTAs or the "Governing Law" provision in the Master Leases applies to any of the Plaintiffs' tort claims in this action. California choice of law rules dictate that whether a contractual choice-of-law provision encompasses tort claims related to the contract is a question of contract interpretation that is determined pursuant to the law specified in the contractual choice of law provision. *Cannon v.*

1    *Wells Fargo Bank NA*, 917 F. Supp. 2d 1025, 1051 (N.D. Cal. 2013) (citing *Nedlloyd Lines B.V. v.*

2    *Superior Court,* 3 Cal.4th 459, 469 n. 7 (1992)); *see also JMP Sec. LLP v. Altair Nanotech.*

3    *Inc.,* 880 F. Supp. 2d 1029, 1035–36 (N.D. Cal. 2012) (applying *Nedlloyd*).

4         Accordingly, the Court must look to the laws of the four states where SNFs are located, and

5    to the law of Delaware referred to in the Master Leases, to determine whether a contractual choice

6    of law provision covers Plaintiffs' tort claims. Under the laws of all but Kansas it clearly does not.

7    The analysis for Kansas is a little more complicated, but upon completing it the Court should apply

8    California law to all of Plaintiffs' claims.

9         **B.  Nebraska**

10        "Focusing on the parties' intent, courts in Nebraska distinguish between broad and narrow

11   choice of law provisions in order to determine whether a choice of law agreement includes tort

12   claims."  *Richardson Intl (US) Ltd v. Buhler Inc.*, No. 8:14CV148, 2017 WL 11485738, at *5 (D.

13   Neb., March 23, 2017).  In *Richardson*, the court had before it the following contractual choice of

14   law clause very similar to the one in the OTAs here:

15        "This Agreement shall be *governed by* the Uniform Commercial Code as adopted in the
          State of North Carolina and is in effect on the date of this Agreement and ***the Buyer and***
16        ***Seller expressly agree that North Carolina law shall govern and be applied to all issues of***
          ***interpretation or of substantive law which arise under this Contract.***
17

18   *Id.* at *1 (emphasis in original).  Relying on an Eighth Circuit case also applying Nebraska law, the

19   court held that the clause was "narrow" and did not encompass tort claims related to the contract:

20        The court finds the choice of law provision in the Contract does not cover the plaintiff's tort
          claims. The language used in the Contract, when read according to its plain meaning, does
21        not effectively displace the entire body of Nebraska law but merely provides that the North
          Carolina law of contract interpretation and substantive contract law applies to contract
22        disputes.

23   *Id.* at *7.  The same result should obtain here.

24        **C.  South Dakota**

25        Two recent decisions by the U.S. District Court of South Dakota make clear that South

26   Dakota choice of law analysis is the same as that of Nebraska for purposes of this case.  The

27   "applicable law" provision in the OTAs for the South Dakota SNFs is "narrow" and does not

28   DEFENDANTS NOTICE OF MOTION
     AND MOTION TO DISMISS
     CASE NO. 20-cv-2044-SK
                                              - 9 -

1    encompass the South Dakota Entity Plaintiffs' tort claims.

2        In *SMA, LLC v. Chief Indus, Inc.*, No. 3:17-CV-03021-RAL, 2020 WL 1515758, at *7

3    (D.S.D., March 30, 2020), the court, applying South Dakota choice of law principles, considered a

4    contractual provision much like the one in the OTAs here:  "This Agreement shall be governed by,

5    and construed in accordance with, the internal laws of the State of Nebraska, USA." Said the court,

6    relying in part on the same Eighth Circuit case as did the Nebraska District Court in *Richardson*,

7    "This   is   what   is   considered   to   be   a   narrow choice of law provision,   as   opposed   to   a

8    broad choice of law provision that would subject any and all claims of any nature between the

9    parties to a particular state's law." *Id.* Accordingly, the court held that this "contract language does

10   not state that all claims between SMA and Chief Industries are governed by Nebraska law, but only

11   that "[t]his Agreement shall be governed by ... laws of the State of Nebraska." *Id.*

12       Another judge of the District Court of South Dakota reached the same result in another very

13   recent decision. In *Fischer Farms v. Big Iron Auction Co, Inc.*, No. CIV 19-4111, 2020 WL

14   475607, at *3 (D.S.D., January 28, 2020) the contractual choice of law clause provided:

15       <u>Jurisdiction and Venue:</u> This Agreement shall be binding and effective when signed by a
         representative of BigIron, shall be deemed to have been entered into in Nebraska and shall
16       be governed and construed in accordance with the laws of the State of Nebraska. Seller
         knowingly and voluntarily consents and submits to the jurisdiction of the State of Nebraska
17       for the purposes of adjudicating all rights and liabilities to the Parties pursuant to this
         Agreement."
18

19   While the issue before the court in *Fischer* was venue, in the course of its analysis the court spoke

20   to the scope of the choice of law clause under South Dakota law.  The court first acknowledged that

21   "issues of contract interpretation will likely be decided under Nebraska law pursuant to the choice-

22   of-law provision in the Written Agreement." *Id.* at *7. But as to plaintiffs' "several torts claims,"

23   the court stated:

24       "It is questionable whether these would be governed by the Written Agreement's choice-of-
         law provision. *See Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, (8th Cir. 2001)
25       (applying Nebraska law to a clause providing that the "agreement shall be governed by and
         construed   in   accordance   with   Illinois law,"   reasoning   that   "[w]hile   this   provision
26       adequately covers disputes concerning how to construe the [agreement], the language is not
         broad   enough   to   govern   the   choice   of   law   for   the   fraudulent concealment claim,   which
27       sounds in tort. Although the claim arose out of the circumstances surrounding the formation
         of the contract, there is no indication in the [agreement] that the parties intended to elect

28   DEFENDANTS NOTICE OF MOTION
     AND MOTION TO DISMISS
     CASE NO. 20-cv-2044-SK
                                              - 10 -

1     Illinois law as the forum for every contract-related claim.).

2  *Fischer*, 2020 WL 475607, at *8.

3     Thus, on both the very recent occasions on which the District Court of South Dakota had

4  occasion to consider whether a "narrow" contractual choice of law clause like the one in the OTAs

5  here covered tort as well as contract claims it decided that the clause did not.

6     **D.  Pennsylvania**

7     Several decisions by the state and federal courts of Pennsylvania establish that Pennsylvania

8  choice of law analysis is the same as that of Nebraska and South Dakota for purposes of the

9  Pennsylvania purchaser-operator Plaintiffs' claims.  The "applicable law" provision in the OTAs for

10  the Pennsylvania SNFs is, again, a "narrow" one and does not cover the tort claims in this case.

11     The Pennsylvania analytical framework for the scope of choice of law clauses is well and

12  succinctly stated in the oft-cited case *Jiffy Lube Intern, Inc. v. Jiffy Lube of Pennsylvania, Inc.*, 848

13  F. Supp. 569, 576 (E.D. Pa. 1994) (internal citations omitted).

14     Contractual choice of law provisions, however, do not govern tort claims between
       contracting parties unless the fair import of the provision embraces all aspects of the
15     legal relationship.  Courts analyze choice of law provisions to "determine, based on their
       narrowness or breadth, whether the parties intended to encompass all elements of their
16     association." A careful reading of the choice of law provision at issue here demonstrates its
       restricted scope.  The provision is limited on its face to "this agreement." As such, the
17     Maryland choice of law provision only governs the construction, interpretation and
       enforcement of the 1987 Agreement.  Elph's various tort claims of fraud and
18     misrepresentation require a separate choice of law analysis.

19     The Third Circuit has relied on *Jiffy Lube* and multiple other cases applying Pennsylvania

20  choice of law analysis to hold that a provision stating that an clause stating that "[t]his agreement

21  will be governed by, and construed and enforced in accordance with, the laws of" a state, which is

22  even broader than the choice of law clause in the OTAs here, is still "narrow" and does not apply to

23  fraud claims. *See Black Box Corp. v. Markham*, 127 Fed. App'x 22, 25–26 (3rd Cir. 2005). Thus,

24  Pennsylvania law is abundant and clear that a "narrow" contractual choice of law clause like the one

25  in the OTAs here does not apply to tort claims like the Pennsylvania Entity Plaintiffs' here.

26     **E.     Delaware**

27     Although the tort claims relate to financial disclosures made pursuant to the OTAs and not

28  DEFENDANTS NOTICE OF MOTION
    AND MOTION TO DISMISS
    CASE NO. 20-cv-2044-SK

1    the Master Leases, the Plaintiffs may attempt to argue for application of the Delaware choice of law

2    clauses in those Master Leases.   Under Delaware law, however, such a choice of law clause is

3    narrow and does not include tort claims.

4         In *VSI Sales, LLC v. Intl Fid Ins Co*, No. CV 15-507-GMS, 2015 WL 5568623, at *3 (D.

5    Del., September 22, 2015), the U.S. District Court for Delaware addressed this issue directly and

6    with citation to multiple Delaware state law authorities:

7         Before applying a choice-of-law provision to a claim, Delaware courts examine whether the
          contracting parties drafted the provision broadly or narrowly. *See Gloucester Holding Corp.*
8         *v. U.S. Tape and Sticky Products, LLC*, 832 A.2d 116, 124 (Del. Ch. 2003). Courts have
          held that choice-of-law provisions that explicitly apply to "any claim arising out of or
9         relating to" a contract are broad enough to cover quasi-contract and tort claims arising from
          contractual agreements. *See id.*; *Eby v. Thompson*, No. 03C-10-010, 2005 WL 1653988, at
10        *3 (Del. Super. Ct. April 20, 2005). Courts have held that narrow choice-of-law provisions
          that do not include such expansive language apply only to claims directly arising from the
11        contracts themselves. *See Gloucester*, 832 A.2d at 124; *Huffington v. T.C. Group, LLC*, No.
          N11C-01-030, 2012 WL 1415930, at *11 (Del. Super. Ct. April 18, 2012) ("The choice of
12        law provision, without language such as *arises out of or relates to*," only requires the Court
          to apply Delaware law to claims challenging the terms and provisions of the Subscription
13        Agreement." (emphasis in original)).

14   The "narrow" choice of law clause in the two Master Leases here does not include the "expansive

15   language" required to encompass tort claims and therefore applies "only to claims directly arising

16   from the contracts themselves."

17        In 2018, the U.S. District Court for the Southern District of California relied on *VSI Sales* in

18   conducting the very same analysis now required of this Court:

19        "Delaware courts examine whether the contracting parties drafted the choice-of-law
          provision broadly or narrowly." *VSI Sales, LLC v. Int'l Fidelity Ins. Co.*, No. 15-507-GMS,
20        2015 WL 5568623, at *3 (D. Del. Sept. 22, 2015). Specifically, Delaware courts have found
          that a choice-of-law provision that applies to "any claim arising out of or relating to" a
21        contract is broad enough to also cover quasi-contract and tort claims arising from contractual
          agreements. *Gloucester Holding Corp. v. U.S. Tape and Sticky Prods., LLC*, 832 A.2d 116,
22        124 (Del. Ch. 2003). Narrow choice-of-law provisions, however, apply only to claims
          directly arising from the contract itself. *See id.*

23

24   *Lorem Vascular, Pty Ltd v. Cytori Therapeutics, Inc.*, No. 18CV815 MMA (MDD), 2018 WL

25   3388096, at *8 (S.D. Cal. July 11, 2018); *but see Abry Partners V, L.P. v. F & W Acquisition LLC*,

26   891 A.2d 1032, 1048 (Del. Ch. 2006). The same result should obtain here.

27   / / /

28   DEFENDANTS NOTICE OF MOTION
     AND MOTION TO DISMISS
     CASE NO. 20-cv-2044-SK

1

2      **F.  Kansas**

3            While there is not much Kansas authority on this issue, the U.S. District Court for Kansas

4      recently relied on an unpublished decision of the Kansas Court of Appeals to hold that "a provision

5      stating: "This agreement shall be construed and interpreted in accordance with the laws of the state

6      of Kansas (irrespective of such state's conflict of law principles)...." dictated that "choice-of-law

7      clauses establishing the law 'governing' *or 'construing'* the documents in which they appear,

8      nonetheless, encompass tort claims directly related to or affecting the rights and obligations created

9      or memorialized there." *Cessna Fin Corp. v. JetSuite, Inc.*, No. 18-1095-EFM-KGG, 2020 WL

10     430211, at *8 (D. Kan., January 28, 2020) (quoting *Enter. Bank & Tr. v. Barney Ashner Homes,*

11     *Inc.*, 2013 WL 1876293, at *16 (Kan. Ct. App. 2013)) (emphasis in original). Because the

12     "applicable law" clause of the OTAs for the Kansas SNFs here contains similar "governed by and

13     construed in accordance with" language, the OTA "applicable law" clause likely applies to the

14     Entity Plaintiffs' tort claims related to the transfers of the Kansas SNFs' operations.

15            But that does not end the analysis. Even if a contractual choice of law clause providing for

16     application of another state's law covers tort claims California's choice of law rules require

17     application of the multi-part test set out in *Restatement (Second) of Conflict of Laws* § 187 as set

18     forth in *Nedlloyd Lines B.V. v. Superior Court,* 3 Cal. 4th 459 (1992); *See, e.g.*, *King v. Bumble*

19     *Trading, Inc.*, 393 F. Supp. 3d 856, 865 (N.D. Cal. 2019); *Commerce Point Capital, Inc. v. First*

20     *Data Corp.*, No. 19-CV-556-W (LL), 2019 WL 7020057, at *3–4 (S.D. Cal., December 20, 2019).

21            Under *Nedlloyd*, a court must first determine whether California would be the state of the

22     applicable law in absence of an effective choice of law by the parties. 3 Cal. 4th at 465-466. Here,

23     California law applies to Plaintiffs' non-contractual claims because California is the forum state, all

24     the Defendants but one individual are alleged to be California citizens, and Plaintiff alleges that "a

25     substantial part of the acts or omissions giving rise to this action occurred in the Northern District of

26     California." (Complaint at ¶ 190); *See id.* 467. The Court must therefore continue the analysis with

27     reference to California and Kansas and their respective laws.

28            The next step under the *Nedloyd* framework is to determine if Kansas has a substantial

relationship to the parties or their transaction, or whether there is any other reasonable basis for the parties' choice of law. *Id.* at 465-466. If so, the Court proceeds to determine "whether the chosen state's law is contrary to fundamental policy of California." *Id.* at 466.

> "To determine the public policy of a state, 'the Constitution, laws, and judicial decisions of that state, and as well the applicable principles of the common law, are to be considered.' " *Ahn*, 798 F.3d at 1156 (quoting *Twin City Pipe Line Co. v. Harding Glass Co.*, 283 U.S. 353, 357, 51 S.Ct. 476, 75 L.Ed. 1112 (1931)). No bright-line rules govern this analysis. *See Century 21 Real Estate LLC v. All Prof'l Realty, Inc.*, 889 F. Supp. 2d 1198, 1216 (E.D. Cal. 2012), *aff'd*, 600 F. App'x 502 (9th Cir. 2015) (citing Rest., § 187 cmt. g); *see also Discover Bank v. Super. Ct.*, 134 Cal. App. 4th 886, 893, 36 Cal.Rptr.3d 456 (2005) ("We are not aware of any bright-line rules for determining what is and what is not contrary to a fundamental policy of California"). It is clear, however, that the policy must be a "substantial" one. *See Brack v. Omni Loan Co.*, 164 Cal. App. 4th 1312, 1323, 80 Cal.Rptr.3d 275, (2008) (citing Rest., § 187 cmt. g).

*King*, 393 F. Supp.3d at 866.

Kansas has relationship to the parties and transactions related to the transfer of the Kansas SNFs' operations since those facilities are located in Kansas. As to whether the relevant portion of Kansas law is contrary to fundamental policy in California law, both states recognize the "economic loss doctrine" whereby claimants like Plaintiffs here are prevented from

> "asserting a tort remedy in circumstances governed by the law of contracts." *BHC Dev., L.C. v. Bally Gaming, Inc.*, 985 F. Supp. 2d 1276, 1287 (D. Kan. 2013) (citations omitted). In effect, this means that plaintiffs cannot recover under tort theories when their claims are actually based in contract. In other words, if plaintiffs' claims arise under the contract – "as opposed to an independent duty arising by operation of law" – plaintiffs cannot assert tort claims to recover economic damages. *Rand Const. Co. v. Dearborn Mid-W. Conveyor Co.*, 944 F. Supp. 2d 1042, 1062 (D. Kan. 2013); *see Andrewjeski v. Bimbo Foods Bakeries Distribution, LLC*, No. 18-2425-KHV, 2019 WL 2250068, at *13 (D. Kan. May 24, 2019).

*Pipeline Productions, Inc. v. Madison Companies, LLC*, No. CV 15-4890-KHV, 2020 WL 1274968, at *4 (D. Kan., March 17, 2020). However, whereas "the economic loss doctrine is still developing under Kansas law, and Kansas courts have largely limited its application to the commercial product liability sphere[,]" *id.*, in California the doctrine is fully developed and unquestionably applies beyond the "commercial product liability sphere." *See*, *e.g.*, *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004). Under California law:

> The economic loss rule, in summary, "is that no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement." *Oracle USA, Inc. v. XL Global Services, Inc.*, C 09–00537 MHP, 2009 WL 2084154, at *4 (N.D. Cal. July 13, 2009). This rule serves to prevent every

1
2
3
4
5
6
7

breach of a contract from giving rise to tort liability and the threat of punitive damages: "Quite simply, the economic loss rule prevents the law of contract and the law of tort from dissolving one into the other." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal.4th 979, 988 (Cal.2004) (internal quotation marks and brackets omitted). Limiting recovery to contract damages makes it easier for parties to "estimate in advance the financial risks of their enterprise." *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal.4th 85, 106 (Cal.1995) (quoting *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 515 (Cal.1994)); *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 694 (Cal.1988). As a result, the rule is particularly applicable when a party alleges "commercial activities that negligently or inadvertently [went] awry." *Robinson Helicopter*, 34 Cal.4th at 991 n.7. However, the economic loss rule can still bar fraud and other intentional tort liability if those claims do not arise independently of the breach of contract claims. *See id.* at 990.

8
9
10
11
12

*WeBoost Media SRL v. LookSmart Ltd*, No. C 13-5304 SC, 2014 WL 824297, at *4 (ND Cal, February 28, 2014). Thus, by virtue of Kansas "largely limiting" circumstances in which the economic loss doctrine is applicable to the "commercial product liability sphere," while California applies the doctrine in other contexts like this case, a relevant portion of Kansas law is contrary to fundamental policy in California law.

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Because there is a conflict between Kansas law and a fundamental policy in California law, the Court then must ask whether California has a materially greater interest than does Kansas. To determine whether Kansas or California has a materially greater interest, the Court must examine: "(1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and, (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties." *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1324 (9th Cir. 2012) (citing *1–800–Got Junk? LLC v. Superior Court*, 189 Cal. App. 4th 500, 513 n.10 (2010)). The Complaint makes no allegation as to the first three factors. As to the fourth factor, both Kansas and California have connections since the SNFs are located in Kansas, but the Complaint alleges that "a substantial part of the acts or omissions giving rise to this action occurred in the Northern District of California." (Complaint at ¶ 190).  California also has a connection to the fifth, since the Complaint alleges that all the Defendants but one individual are alleged to be California citizens. The Complaint does not allege that any Plaintiff is a citizen of Kansas.  Plaintiffs picked California as the forum and allege that "a substantial part of the acts or omissions giving rise to this action occurred in" this district.

28

DEFENDANTS NOTICE OF MOTION
AND MOTION TO DISMISS
CASE NO. 20-cv-2044-SK

- 15 -

Evaluating these factors, California has a materially greater interest in the claims by the Kansas Entity Plaintiffs than does Kansas. Accordingly, the Court should apply California law to those claims despite the Kansas "applicable law" clause in the relevant OTAs.

### G. Conclusion

At the conclusion of this choice of law steeplechase it is apparent that for purposes of this motion to dismiss the claims alleged by Plaintiffs, the Court should apply California law to all Plaintiffs' claims. *See JMP Sec LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp.2d at 1037; *Workplace Techs. Research, Inc. v. Project Mgmt. Inst., Inc.*, No. 18CV1927 JM (MSB), 2019 WL 1239314, at *9 (S.D. Cal., March 18, 2019) (absent an effective choice of law agreement California choice of law rules permit court to apply the decisional rules of its forum state unless litigant timely invokes the law of a foreign state).

## V.  <u>ARGUMENT</u>

### A.  Plaintiffs' Claims are Untimely Under the Applicable Statute of Limitation, and the Entity Plaintiffs' Claims are Also Untimely Under the OTAs

Under California law, fraud and misrepresentation claims are subject to a three-year statute of limitations. Cal. Civ. Proc. Code § 338(d); *see Kline v. Turner*, 87 Cal. App. 4th 1369, 1373 (2001) ("An action for relief on the grounds of fraud or mistake must be commenced within three years."); *Yetter v. Ford Motor Company*, 428 F. Supp. 210, 221 (N.D. Cal. 2019); *Finnell v. Ford Motor Co.*, No. 5:19-CV-08030-EJD, 2020 WL 1082704, at *1 (N.D. Cal. March 6, 2020). "A claim for negligent misrepresentation has either a two-year or three-year statute of limitations, depending on whether the essence of the claim is negligence or fraud."  *Arnold v. Metlife Auto & Home Ins. Agency, Inc.*, No. 19-CV-03920-VKD, 2020 WL 1067005, at *7 n.5 (N.D. Cal. March 5, 2020) (citing *Johnston v. Covidien, LP*, No. C19-01419 WHA, 2019 WL 2410720, at *3 (N.D. Cal. June 7, 2019)) (other citations omitted). Causes of action grounded in fraud or mistake are "not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."  Cal. Civ. Proc. Code § 338(d).

Plaintiffs allege that "It became **immediately apparent** after taking control of the operations at each of the facilities that the financial statements and representations made by

1   Defendants were false and misleading." (Complaint at ¶ 209)[1] (emphasis added). Based on the

2   allegations in, and the exhibits to, the Complaint, therefore, Plaintiff's causes of action accrued on

3   October 1, 2016 (the date of the Master Lease) for the Nebraska-related claims; November 1, 2016

4   (the date of the Amended and Restated Master Lease adding the Kansas facilities to the Master

5   Lease) for the Kansas-related claims; January 1, 2017 (the date of the Second Amended and

6   Restated Master Lease adding the South Dakota facilities to the Amended and Restated Master

7   Lease) for the South Dakota-related claims; and February 1, 2017 (the date of the second Master

8   Lease) for the Pennsylvania-related claims.

9          Accordingly, all Plaintiffs' fraudulent and negligent misrepresentation claims were untimely

10   when filed on March 24, 2020. The applicable statutory limitation period on the fraudulent

11   misrepresentation claims had expired from almost five to almost two months earlier. On the

12   negligent misrepresentation claims, the essence of which was clearly negligence rather than fraud or

13   else they would be nothing more than duplicates of the fraudulent misrepresentation claims, the

14   applicable statutory limitation period expired from almost seventeen to almost fourteen months

15   earlier.

16          Plaintiffs' claims are also untimely under the time limitations of the OTAs.  As noted above,

17   the financial disclosures upon which Plaintiffs' claims are based are pursuant to and governed by

18   Section 14.1(F) in the Representations and Warranties of the OTAs. The express representation

19   made by the Former Operator Defendants with regard to those financial disclosures was that, "To

20   the actual knowledge of Operator's Senior Executives, except as set forth on **Schedule 14.1(F),** the

21   Facility Financial Statements present fairly and accurately in all material respects the financial

22   condition of the Facility and the results of operation of the Facility at the dates and for the periods

23   indicated consistent with Operator's past practices in preparing financial statements." (Emphasis in

24   original). The OTAs, and thus the Entity Plaintiffs, expressly disclaimed and excluded any and all

25   _____

26   [1] Interestingly, Plaintiffs filed the Amended Complaint and again pled that the alleged fraud was
27   "**immediately apparent** after taking control of the operations at each of the facilities" (emphasis
     added), hence doubling down on exactly when Plaintiffs knew of the alleged misrepresentations.

28   DEFENDANTS NOTICE OF MOTION
     AND MOTION TO DISMISS
     CASE NO. 20-cv-2044-SK

1    representations not contained in the OTAs.

2          Under Section 17(F) of the OTAs, however, the survival period for breach of the

3    representations and warranties, including the financial disclosures, was "one (1) year after the

4    Closing Date." To the extent that a claim was asserted in writing within the survival period, the

5    party asserting the claim had thirty (30) days after the end of the survival period to institute formal

6    litigation. Despite pleading that the alleged inaccuracy of the financial disclosures was

7    "immediately apparent" to them "after taking control of the operations at each of the facilities," the

8    Plaintiffs did not assert any claim within the applicable survival period under the OTAs. Indeed,

9    they did not assert any claim until filing this action more than three years later.

10         Thus, all Plaintiffs' claims are time-barred and should be dismissed for failure to state a

11   claim. *Netlist, Inc. v. SMART Storage Sys., Inc.,* No. 13-CV-5962-YGR, 2014 WL 4380760, at

12   *3 (N.D. Cal. Sept. 4, 2014) (citing *In re Brocade Commc'ns Syst., Inc. Derivative Litig.,* 615 F.

13   Supp.2d 1018, 1035 (N.D. Cal. 2009) ("If the expiration of the applicable statute of limitations is

14   apparent from the face of the complaint, the defendant may raise a statute of limitations defense in

15   a Rule 12(b)(6) motion to dismiss").

16         **B.  The Economic Loss Doctrine Bars the Entity Plaintiffs' Tort Claims**

17         As briefly discussed above, "'The economic loss rule [states] that no tort cause of action will

18   lie where the breach of duty is nothing more than a violation of a promise which undermines the

19   expectations of the parties to an agreement.'" *JMP Securities LLP v. Altair Nanotechnologies, Inc.*,

20   880 F. Supp. 2d at 1042. In *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988

21   (2004), the California Supreme Court explained, "The economic loss rule requires a purchaser to

22   recover in contract for purely economic loss due to disappointed expectations, unless he can

23   demonstrate harm above and beyond a broken contractual promise." The oft-articulated purpose of

24   this rule is to maintain a distinction between tort law and contract law. "Quite simply, the economic

25   loss rule "prevent[s] the law of contract and the law of tort from dissolving one into the other." *Id.*

26   at 988 (quoting *Rich Prod. Corp. v. Kemutec, Inc.*, 66 F. Supp. 2d 937, 969 (E.D. Wis. 1999); *see*

27   *also Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007) ("Broadly

28   DEFENDANTS NOTICE OF MOTION
     AND MOTION TO DISMISS
     CASE NO. 20-cv-2044-SK

                                        - 18 -

1   speaking, the economic loss doctrine is designed to maintain a distinction between damage
2   remedies for breach of contract and for tort.").

3       Accordingly, "[t]he [economic loss] rule generally bars tort claims based on contract
4   breaches, 'thereby limiting contracting parties to contract damages.'" *UMG Recordings, Inc. v.*
5   *Global Eagle Entm't Inc.*, 117 F. Supp. 3d 1092, 1103 (C.D. Cal. 2015) (citing *United Guar. Mortg.*
6   *Indem. Co. v. Countrywide Financial Corp.*, 660 F. Supp. 2d 1163, 1180 (C.D. Cal. 2009)); *Lever*
7   *Your Business, Inc. v. Sacred Hoops & Hardwood, Inc.*, No. 519CV1530CASKKX, 2019 WL
8   7050226, at *6–7 (C.D. Cal. Dec. 23, 2019).

9       While there are some exceptions to the economic loss rule, it is well-established that
10  "[C]onduct amounting to a breach of contract becomes tortious only when it also violates a duty
11  independent of the contract arising from principles of tort law." *Underwriters at Lloyd's v. Abaxis,*
12  *Inc.*, No. 19-CV-02945-PJH, 2020 WL 1677341, at *3 (N.D. Cal. Apr. 6, 2020) (quoting *Erlich v.*
13  *Menezes*, 21 Cal.  4th 543, 551 (1999)). But where, as here, the alleged misrepresentations are part
14  of and pursuant to the contract, and no duty independent of the contract is alleged or exists, the
15  economic loss doctrine bars claims like Plaintiffs. *See, e.g.*, *Ridgway v. Phillips*, No. 18-CV-07822-
16  HSG, 2020 WL 1288464, at *8 (N.D. Cal., Mar. 18, 2020) (granting Rule 12(b)(6) dismissal where
17  "Plaintiff's fraud claim rests on purported misrepresentations that are the alleged terms of the
18  contract and not conduct independent of the agreement."); *Mishiyev v. Alphabet, Inc.*, No. C 19-
19  05422 WHA, 2020 WL 1233843, at *4 (N.D. Cal. Mar. 13, 2020) (same).  And there cannot be
20  misrepresentations outside the contract because of the integration clause in Section 2(C) of the
21  OTAs.

22      Additionally, "[A] negligent misrepresentation claim paralleling a contract claim that prays
23  only for economic damages will be barred by the economic loss rule unless the plaintiff alleges both
24  that the defendant made an affirmative misrepresentation, ***and that the defendant's***
25  ***misrepresentation exposed the plaintiff to independent personal liability***." *Crystal Springs Upland*
26  *Sch. v. Fieldturf USA, Inc.*, 219 F. Supp. 3d 962, 970 (N.D. Cal. 2016) (citation omitted) (emphasis
27  added); *see also Robinson v. J.M. Smucker Co.*, No. 18-CV-04654-HSG, 2019 WL 2029069, at

28  DEFENDANTS NOTICE OF MOTION
    AND MOTION TO DISMISS
    CASE NO. 20-cv-2044-SK

1    *6 (N.D. Cal., May 8, 2019) (granting motion to dismiss "because Plaintiff has not pled any

2    personal liability, the Court finds the negligent misrepresentation claim barred by the economic loss

3    rule"). The Entity Plaintiffs here have likewise pled no personal liability, and the economic loss

4    doctrine therefore bars their negligent misrepresentation claims.

5          **C.  The OTAs Preclude the Entity Plaintiffs' Claims**

6          The OTAs expressly preclude the Entity Plaintiffs' claims. For example, in Section 2(C) of

7    the OTAs the Entity Plaintiffs expressly disclaimed, released, and waived any and all

8    representations with regard to the assets, properties, rights, or "any other matter regarding or

9    relating to the transaction contemplated hereby." Section 27 contains an integration clause

10   providing that, "There are no other written statements, promises, or representations made by the

11   Parties that are intended to alter, modify or complement this Transfer Agreement." In the

12   Complaint, however, the Entity Plaintiffs seek to pursue just such disclaimed, released, and waived

13   claims after having failed to timely pursue them pursuant to the terms, procedure, and time limits in

14   the OTAs. The disclaimers of reliance in the OTAs are sufficiently specific to satisfy even

15   California's standard for using such a clause as a basis for dismissing fraud claims for lacking the

16   required element of reliance. *See*, *e.g.*, *Abrams v. Blackburne and Sons Realty Capital Corp.*, No.

17   219CV06947CASAS, 2019 WL 8640656, at *13 (C.D. Cal. Dec. 2, 2019) (citing *Signal Hill Serv.,*

18   *Inc. v. Macquarie Bank Ltd.*, No. 11-CV-1539-MMM (JEMx), 2013 WL 12244056, at *7 (C.D.

19   Cal. June 12, 2013) (the non-reliance clause can be effective to bar fraud claims if it contains

20   sufficient level of specificity); *see also Hinesley v. Oakshade Town Ctr.,* 135 Cal. App.

21   4th 289, 300–302 (2005) (disclaimer of reliance clause should have put contract party on notice to

22   ask further questions and was factor in determining whether the plaintiff justifiably relied on alleged

23   representations).

24        Similarly, in Section 17(E)(i) of the OTAs the Entity Plaintiffs expressly agreed that "under

25   no circumstances" would any of the Seller Entities be liable for punitive damages and that "in no

26   event" would they "assert, claim, demand or otherwise request such damages. In spite of this the

27   Complaint requests such damages. While California law will not enforce a contractual waiver of

28   DEFENDANTS NOTICE OF MOTION
     AND MOTION TO DISMISS
     CASE NO. 20-cv-2044-SK

1  punitive damages that are "statutorily imposed remedies," such is not the case here where the Entity

2  Plaintiffs seek only common law punitive damages. *Zaborowski v. MHN Gov't Servs., Inc.*, 936 F.

3  Supp. 2d 1145, 1155 (N.D. Cal. 2013) *aff'd*  601 Fed. App'x 461 (9th Cir. 2014). Accordingly, the

4  Court should enforce the Entity Plaintiffs' punitive damages waiver and dismiss or strike their

5  punitive damages demand.

6        Likewise, in Section 17(E)(ii) of the OTAs the Entity Plaintiffs expressly agreed that, "For

7  the avoidance of doubt, no individual officer, director, member, managing member, shareholder,

8  equity holder, partner, employee, agent, or representative of either Party shall have any liability for

9  any claims of the other Party related to this Transfer Agreement …" Notwithstanding this crystal

10  clear provision the Complaint seeks to impose liability on the Individual Defendants for claims

11  "related to" the OTAs.

12        Section 25 of the OTAs contains a "knowingly, voluntarily, and intentionally" made jury

13  trial waiver, but the Entity Plaintiffs nonetheless seek a jury trial. The law is clear, however, that

14  "The right to a jury trial in federal court is governed by federal law and, under federal law, parties

15  may contractually waive their right to a jury trial." *Bell-Sparrow v. SFG*Proschoicebeauty* (N.D.

16  Cal.   Mar.   14,   2019,   No.   18-CV-06707-YGR)   2019   WL   1201835,   at   *8   citing

17  *Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc.*, 521 F. Supp. 2d 1031, 1044 (N.D. Cal.

18  2007) (citation omitted). The Court should enforce the Entity Plaintiffs' waiver and dismiss or strike

19  their jury demand.

20        Perhaps most emphatically, in Section 17(E)(iv) of the OTAs the Entity Plaintiffs expressly

21  agreed that, "The remedies provided in this <u>Section 17</u> shall be the sole and exclusive remedies

22  post-Closing that may be available to a Party or an Asserting Party with respect to any matters

23  arising under or relating to this Transfer Agreement, any document executed and delivered pursuant

24  to the provisions hereof and the transactions contemplated herein." (Emphasis in original).

25  Although their claims in this case clearly related to documents delivered pursuant to the OTAs and

26  to the transactions contemplated in the OTAs, the Entity Plaintiffs did not pursue the remedies

27  provided in Section 17 of the OTAs and instead seek to pursue other remedies in the Complaint. But

28

1    the Entity Plaintiffs agreed in the OTAs that they could not do this.

2           **D.  The Complaint Fails to Plead the Elements of Fraud, Much Less with Particularity**

3           Federal Rule of Civil Procedure 9(b) requires that "a party must state with particularity the

4    circumstances constituting fraud or mistake. Allegations of fraud must "be specific enough to give

5    defendants notice of the particular misconduct so that they can defend against the charge and not

6    just deny that they have done anything wrong. Averments of fraud must be accompanied by the

7    who, what, when, where, and how of the misconduct charged." *Holley v. Gilead Scis., Inc.,* 379 F.

8    Supp. 3d 809, 817 (N.D. Cal. 2019) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106

9    (9th Cir. 2003)).  The Plaintiffs fail to meet this standard here.

10          For example, the Complaint alleges, that the Defendants "prepared misleading, false, and

11   manipulated financials for each of its nursing home facilities with the purpose of enticing

12   prospective tenants and new operators to overpay for the lease of its facilities."  (Complaint at ¶¶

13   192-93). But the Complaint does not identify the particular "financials" to which it refers, the

14   "when" of the period or periods to which those financials related, or the "where" and "how" the

15   alleged false statements were made.

16          Next, the Complaint alleges that the "Defendants knew that several of its expenses in the

17   disclosed financial statements were significantly below the rates that would be charged to any new

18   operator of those facilities. This includes, but is not limited to, the preferential rates GGNSC Admin

19   received from Staffing 360 (the unrelated staffing company used for all of its facilities) would not

20   be extended to any subsequent operator of those facilities." (Complaint at ¶ 194).  But this is not an

21   allegation of "false" financials, but rather true ones for the Defendants' operations of the SNFs.

22   Moreover, the Complaint identifies only one of the purported "several" expenses.

23          Indeed, this allegation shows that the financial disclosures were exactly as they were

24   represented to be in the OTAs, which expressly disclaimed and excluded any other representations

25   other than that, "To the actual knowledge of Operator's Senior Executives, except as set forth on

26   **Schedule 14.1(F),** the Facility Financial Statements present fairly and accurately in all material

27   respects the financial condition of the Facility and the results of operation of the Facility at the dates

28   DEFENDANTS NOTICE OF MOTION
     AND MOTION TO DISMISS
     CASE NO. 20-cv-2044-SK

                                        - 22 -

1   and for the periods indicated consistent with Operator's past practices in preparing financial

2   statements." Even though the Complaint asserts claims sounding in "misrepresentation" it fails to

3   note this, the only representation the Former Operator Defendants actually made with regard to the

4   financial disclosures described above, much less to allege that the actual, specific representation as

5   to those disclosures was false in any way.

6       **E.  The Complaint Fails to State a Claim by the Individual Plaintiffs, who also Lack**

7           **Standing**

8       As to Individual Plaintiffs Joseph and Rosie Schwartz the Complaint repeatedly states that

9   they, along with the Entity Plaintiffs, "justifiably relied upon the financials and entered into an OTA

10  and lease agreement with Defendants … ." But the OTAs and Master Leases attached as exhibits to

11  the Complaint belie this allegation as to the Individual Plaintiffs. They are not parties to the OTAs

12  or the Master Leases. Mr. Schwartz signed such documents in his capacity as manager of the Entity

13  Plaintiffs, but not in his individual capacity. California law is clear that "[M]embers of an LLC hold

14  no direct ownership interest in the company's assets and therefore are not directly injured when

15  the company suffers an improper deprivation of those assets." *In re Real Mktg. Servs., LLC*, 309

16  B.R. 783, 788 (S.D. Cal. 2004) (citing *PacLink Commc'ns Int'l, Inc. v. Superior Court*, 90 Cal.

17  App. 4th 958, 964 (2001)). The Complaint does not contain any allegation, much less a

18  particularized allegation, of how either Mr. or Ms. Schwartz was damaged individually. Thus, the

19  Complaint states no claim upon which relief can be granted as to the Individual Plaintiffs. The

20  Court should therefore dismiss the Individual Plaintiffs' claims. *See, e.g.*, *Tanner v. Hightower*, No.

21  EDCV 15-183 JAK(JC), 2016 WL 7974658, at *6 (C.D. Cal. Dec. 13, 2016), *report and*

22  *recommendation adopted,* No. EDCV 15-183 JAK(JC), 2017 WL 354172 (C.D. Cal. Jan. 24, 2017)

23  (citations omitted) ("[T]o the extent plaintiff has an ownership interest in Tannerite Sports LLC—

24  plaintiff lacks prudential standing since he has not sufficiently shown that he personally suffered a

25  direct economic harm independent of any injury to the business entity itself").

26      **F.  The Complaint Fails to State a Claim Against the Individual Defendants**

27      Finally, as to the Individual Defendants, the Complaint wholly fails to identify any

28  DEFENDANTS NOTICE OF MOTION
    AND MOTION TO DISMISS
    CASE NO. 20-cv-2044-SK

1   particularized facts reflecting their liability.  Beyond allegations as to their alleged citizenship in the

2   section of the Complaint setting forth the Parties to the action (Complaint at ¶¶ 64-65), the

3   Complaint makes no allegations concerning them until the counts, in which the Individual

4   Defendants are lumped in with other Defendants in a conclusory fashion without any factual

5   explication about the nature of their individual alleged conduct that could make them liable to

6   Plaintiffs.  This is improper and thus the claims against them must be dismissed.  *See Swartz v.*

7   *KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007).

8   ## VI.  CONCLUSION

9       For the reasons set forth above, Defendants respectfully request that the court grant this

10  motion and dismiss the Plaintiffs' claims in their entirety with prejudice.

11                                      Respectfully Submitted,

12
    DATED: June 5, 2020                PERRY, JOHNSON, ANDERSON,
13                                      MILLER & MOSKOWITZ, LLP

14                          By:     */s/ David F. Beach*
                                    DAVID F. BEACH
15                                  SARAH JANE T.C. TRUONG
                                    Attorneys for Defendants
16                                  NICHOLAS FINN, et al

17

18

19

20

21

22

23

24

25

26

27

28  DEFENDANTS NOTICE OF MOTION
    AND MOTION TO DISMISS
    CASE NO. 20-cv-2044-SK
                                      - 24 -